# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joanne DeSue,                                  :
                                               :
                    Petitioner                 :
                                               :
          v.                                   :  No. 151 C.D. 2021
                                               :
Bank of America (Workers'                      :
Compensation Appeal Board),                    :
                                               :
                    Respondent                 :

Bank of America,                               :
                                               :
                    Petitioner                 :
                                               :
          v.                                   :  No. 183 C.D. 2021
                                               :  Submitted: October 15, 2021
Joanne DeSue (Workers'                         :
Compensation Appeal Board),                    :
                                               :
                    Respondent                 :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 21, 2022


        In these consolidated cross-petitions,[1] Joanne DeSue (Claimant) and

Bank of America (Employer) petition for review of the order of the Workers'

---

        [1] By order dated April 15, 2021, this Court consolidated the cross-petitions and designated
Joanne DeSue as the petitioner pursuant to Pennsylvania Rule of Appellate Procedure 2136.

Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ), which granted Claimant's Claim Petition for a closed period and dismissed her Review Petition to expand her work injury to include a psychological injury. Claimant argues that the WCJ erred by misapplying the burden of proof and by relying upon legally incompetent opinion evidence in rendering his decision. Employer argues that the WCJ erred by admitting the allegations in Claimant's Claim Petition based upon our holding in *Yellow Freight Systems, Inc. v. Workmen's Compensation Appeal Board (Madara)*, 423 A.2d 1125 (Pa. Cmwlth. 1981), on the basis that Claimant failed to timely raise the issue. For the reasons that follow, we reverse in part, vacate in part, and remand for further proceedings.

## I. Background

On August 5, 2016, Claimant filed a Claim Petition against Employer alleging that she sustained a work-related injury while in the course of her employment as a paralegal. Specifically, Claimant alleged she sustained cervical, lumbar spine and left knee injuries as well as an aggravation of preexisting degenerative joint disease. Claimant alleged that she fell at work in 2012, and that continuing work activity created a repetitive trauma that ultimately caused her to separate from employment on August 8, 2013 -- alleged disability date. Claimant sought full disability benefits from August 9, 2013, onward, as well as the payment of medical bills for ongoing disability. Reproduced Record (R.R.) at 1a-3a. On September 19, 2016, Employer filed an untimely Answer[2] to the Claim Petition denying the material allegations contained therein. R.R. at 7a-8a.

---

[2] Employer's Answer was filed more than 20 days after the allotted time for filing an answer to the Claim Petition.

The Claim Petition was assigned to a WCJ, who held multiple evidentiary hearings between October 2016 and February 2019. In support of her Claim Petition, Claimant testified, in relevant part, that she began working for Employer in 2011 as a litigation specialist. Her job with Employer entailed repetitive typing and clicking a mouse on the computer all day long. WCJ's Opinion, 12/20/2019, Finding of Fact (F.F.) No. 6(b)-(c).

In 2007, while working at a prior job, which entailed less computer work, Claimant experienced tingling in her right thumb. Claimant sought medical treatment, which included physical therapy recommended by Joseph C. Maroon, M.D. (Dr. Maroon), and an MRI study. Claimant stopped working because of the injury, but she did not file a claim for workers' compensation benefits. While off work for the injury, Claimant was laid off. Soon thereafter, Claimant resumed employment with a different law firm and experienced no physical problems between then and the start of 2012. F.F. No. 6(d)-(f); R.R. at 29a.

In February 2012, while working for Employer, Claimant's heel got stuck in the carpet and she fell. She immediately notified her manager by email. Claimant missed a few days from work, but she did not seek medical care or file a claim for workers' compensation benefits. Claimant then resumed full duties. F.F. No. 6(g).

In early 2013, Claimant began experiencing neck pain that went into her upper back; tingling, burning and heaviness of her arm; and tingling of her fingers, which worsened. In February 2013, Claimant returned to Dr. Maroon, who ordered an MRI study and physical therapy. Her symptoms progressively worsened. She continued to see Dr. Maroon as well as her primary care physician (PCP), James Gleason, M.D. (Dr. Gleason), and went to physical therapy. At Dr. Maroon's

3

referral, Claimant saw Megan H. Cortazzo, M.D. (Dr. Cortazzo), a pain specialist. Claimant also saw Daniel Wecht, M.D. (Dr. Wecht), a neurological surgeon, for a second opinion. Her current PCP, Matthew A. Vasil (Dr. Vasil), prescribed Xanax for health-related anxiety. F.F. No. 6(h)-(k).

Claimant testified that she stopped working completely on August 8, 2013. Claimant explained that "by the end [she] was literally picking [her] right arm up with [her] left to put it on the desk to try to type." F.F. No. 6(l); R.R. at 37a. When she terminated her employment, she advised Employer's human resource manager that her work activities were aggravating her symptoms. Claimant has not worked anywhere since August 8, 2013. Claimant testified that she continues to have symptomology, which has impacted her daily life, and that she cannot return to her preinjury job because of her constant pain. Claimant received long-term disability benefits through her Employer. As of October 27, 2016, Claimant was treating with her PCP only, no specialists. F.F. No. 6(l)-(o), (s).

At the WCJ hearing held on March 23, 2018, Claimant's counsel, citing *Yellow Freight*, moved to have all facts alleged in the Claim Petition deemed admitted because of Employer's failure to file a timely answer.[3] F.F. No. 7. On March 26, 2018, Claimant filed a Review Petition alleging that she is also suffering from psychological symptoms and disability as a result of her work injury, and she

---

[3] Section 416 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §821, permits an answer to a claim petition to be filed within 20 days of service upon the employer. Additionally, it provides that "if a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the [WCJ] hearing the petition shall decide the matter on the basis of the petition and evidence presented." *Id.* In *Yellow Freight*, we interpreted Section 416 to mean that the untimeliness of an employer's answer admits all well-pled allegations in the petition and bars the employer from introducing evidence of an affirmative defense. 423 A.2d at 1127-28.

4

sought to amend her claim to include a psychological condition. Employer filed a timely and responsive Answer. F.F. No. 4.

In support of her Review Petition, Claimant testified that she had never received treatment from a psychiatrist or psychologist or any healthcare professional in that field. She had previously taken a small dosage of Xanax at bedtime for insomnia. After the fall, Claimant sought mental health treatment from Anna Mathew, M.D. (Dr. Mathew), who is board certified in internal medicine and occupational and environmental medicine, and Gary Breisinger, M.A. (Dr. Breisinger), a psychologist. F.F. No. 6(v)-(w).

At the last hearing on February 8, 2019, Claimant testified that she barely leaves the house and is depressed, anxious, and in constant pain. In addition to increased doses of Xanax, Claimant is also taking Cymbalta for depression. Claimant's physicians had suggested surgery as a possibility, but Claimant had not pursued this course of treatment. Claimant testified that she was not engaged in any physical therapy program. F.F. No. 6(x)-(z).

Claimant presented the deposition testimony of Dr. Mathew, who first saw Claimant in November 2016, at which time Claimant provided her with a history of her injury that she had fallen at work and subsequently developed pain in the neck and right arm, which Claimant described as "burning and tingling." F.F. No. 8. Dr. Mathew reviewed the 2013 MRI report, which described a posterior central and right posterior lateral C5-C6 herniation that was compressing the right nerve root. The 2013 MRI report also noted a right posterior lateral disc protrusion at the C6-C7 level with mild to moderate central canal narrowing. Dr. Mathew testified that Claimant had a herniated disc that was aggravated by performing computer work at her job. Dr. Mathew saw Claimant several times, most recently on April 26, 2018.

5

At her last two visits with Claimant, Dr. Mathew noted weakness of the right thumb, and unchanged pain and functional difficulties. She testified that Claimant's neurological status is slowly worsening because of nerve root impingement. She anticipates a gradual worsening, which may result in myelopathy requiring surgery. Dr. Mathew is treating Claimant with ibuprofen and Zanaflex, a muscle relaxant. Dr. Mathew testified that Claimant is not capable of returning to her job as a paralegal. Noting moderate to marked depression, Dr. Mathew prescribed Cymbalta and referred her to Dr. Breisinger. F.F. No. 8.

Claimant also presented the deposition testimony of Dr. Breisinger, who testified that he first saw Claimant on November 9, 2017, and has since seen her 38 times, most recently on October 23, 2018. Dr. Breisinger rated Claimant's depression and anxiety as moderate to marked. He diagnosed her with "major depressive disorder, single episode, moderate," and "somatic symptom disorder." R.R. at 268a. His prognosis is guarded. Dr. Breisinger opined that Claimant cannot perform her job as a paralegal because she cannot maintain consistency at anything. He testified that Claimant's worsening condition following the work injury intensified her anxiety and depression. He opined that his psychological diagnoses are directly related to the February 2012 fall and aftermath, meaning her deteriorating medical condition, failed attempts at treatment, and attendant financial reality that she cannot get the medical care she needs. Dr. Breisinger testified that continuing work activity through August 2013 contributed to the psychological component of her injury. F.F. No. 9.

In opposition, Employer offered the deposition testimony of Howard J. Senter, M.D. (Dr. Senter), a board-certified neurosurgeon, who was deposed on September 6, 2018. Dr. Senter saw Claimant on February 9, 2017, at which time he

6

obtained a history from her and reviewed her medical records, and diagnostic studies, including MRI studies taken in 2007, 2013, and 2015, as well as her course of treatment and symptomology. Dr. Senter testified that Claimant's pain was not severe enough to warrant surgery. Based upon his examination and review of records, Dr. Senter testified that, if Claimant sustained an injury on February 12, 2012, at most, it was a cervical sprain and strain from which she has fully recovered because those types of injuries typically resolve in three to four months. As to Claimant's aggravation from continuing to work until August 2013, Dr. Senter testified that her work activity would not have specifically aggravated her preexisting condition. He opined that it is in the nature of degenerative disc disease to progress. He noted that there is no neurosurgical study that has ever shown that sitting at a desk and using a mouse accelerates preexisting cervical degenerative disc disease. When asked whether Claimant's continuing work activity from February 2012 through August 8, 2013 aggravated, exacerbated, or accelerated her preexisting condition, he testified that anyone who claims that would be medically incorrect. Dr. Senter noted that the 2013 and 2015 MRI studies showed Claimant's condition worsened even though she had stopped working. Dr. Senter did not agree that Claimant has a herniated disc, opining that she has a disc osteophyte complex and neuroforaminal stenosis. He continuously disagreed that working at a computer with a mouse aggravated or accelerated any preexisting condition. He testified that, as of the time of his evaluation, Claimant could return to her preinjury job and did not require any work-related treatment. F.F. No. 10.

Employer also offered the deposition testimony of Robert Wettstein, M.D., who is board certified in psychiatry and forensic psychiatry. Dr. Wettstein testified that he evaluated Claimant on June 4, 2018. Based upon the history he

7

obtained, review of her medical records, and mental status examination, he diagnosed her with somatic symptom disorder with persistent pain, which he related to her chronic upper extremity pain and radiculopathy. He opined that psychological treatment is necessary for the foreseeable future. Dr. Wettstein did not reach a conclusion about the work-relatedness of her chronic pain and did not offer a specific opinion as to her ability to work. F.F. No. 11.

Based upon the evidence presented, the WCJ found that Claimant gave notice of her work injury to her Employer on April 13, 2013, when she advised Employer's human resource manager that her work injuries were aggravating her symptoms. F.F. No. 12.

As for the applicability of *Yellow Freight*, the WCJ determined that Employer's Answer was untimely. Claimant filed her Claim Petition on August 5, 2016, but Employer did not file its Answer until September 19, 2016, which is beyond the 20-day statutory deadline, without adequate excuse. Applying *Yellow Freight*, the WCJ determined that, as a consequence of its untimely Answer, Employer admitted to all allegations prior to September 19, 2016, including that Claimant's work activities through August 8, 2013, aggravated her preexisting condition as to render her unable to perform her preinjury job as a paralegal. The WCJ found that Employer did not admit any liability after September 19, 2016, and ongoing. The WCJ placed the burden on Claimant to prove "by a preponderance of the evidence that she continues to be entitled to benefits on and after the September 19, 2016 filing date." F.F. No. 13.

As for Claimant's physical disability, the WCJ found that Claimant suffered a temporary, total disability from September 19, 2016, through February 8, 2017. In reaching this finding, the WCJ relied primarily upon Dr. Mathew's

8

uncontradicted opinion that Claimant was disabled during this time as a result of a work-related aggravation of her preexisting condition. F.F. No. 15.

As of February 9, 2017, the WCJ found that Claimant was no longer suffering from any impairment or disability from a work-related aggravation of her preexisting condition but that her ongoing symptoms were related to her preexisting condition only. In reaching this finding, the WCJ relied upon the medical opinion of Employer's expert, Dr. Senter, who the WCJ found competent and credible. Insofar as Dr. Mathew's opinions contradicted those of Dr. Senter, the WCJ rejected Dr. Mathew in favor of Dr. Senter. The WCJ explained that Dr. Senter noted that Claimant had symptoms as far back as 2007 from her preexisting condition, including a nerve root compression on the right at C5-C6 level in 2007. Dr. Senter also noted that the 2013 MRI indicated a continuing presence of the right C5-C6 nerve root compression and the 2015 MRI continued to show the same nerve root compression. Dr. Senter noted that the 2015 MRI showed a worsening of Claimant's underlying condition during a period that Claimant was no longer working. Dr. Mathew could not explain Claimant's worsening condition while Claimant was not working. F.F. No. 15.

The WCJ rejected Dr. Breisinger's opinion. The WCJ noted that Dr. Breisinger did not see Claimant until "November 9, 2017, well after the date of Dr. Senter's evaluation of February 9, 2017." F.F. No. 16. Dr. Breisinger's opinion that Claimant's "physical symptomatology[,] which has caused the . . . psychological impairment was related to the work injury cannot be adopted as fact." F.F. No. 16. The WCJ explained that, "[w]hile it certainly appears that [Claimant] does have a psychological impairment due to the physical symptoms she is experiencing," noting that "both Dr. Wettstein and Dr. Breisinger have come to that conclusion after very

9

thorough evaluations of [Claimant]," the psychological "impairment cannot be related to the work injury in that I have found [Claimant] to be fully recovered from that work injury as of February 9, 2017." F.F. No. 16.

Ultimately, the WCJ concluded that Claimant is entitled to compensation for the closed period commencing August 9, 2013, to September 19, 2016, as a result of Employer's late Answer, and from September 19, 2016, through February 8, 2017, having established a temporary, total disability from the work-related aggravation of her preexisting condition by unequivocal medical testimony. However, the WCJ concluded that Claimant did not establish any residual physical impairment or disability on or after February 9, 2017. Thus, the WCJ terminated benefits effective February 9, 2017. The WCJ also concluded that Claimant did not establish any psychological impairment as a result of the work injury or pain symptomology, having determined that Claimant had fully recovered from her work-related physical injury as of February 9, 2017. The WCJ credited Employer for any unemployment compensation, short-term disability, and leave of absence benefits it paid to Claimant during the period of the award. WCJ's Opinion, 12/20/2019, Conclusions of Law Nos. 3-8.

By decision and order circulated on December 20, 2019, the WCJ granted Claimant's Claim Petition for the closed period of August 9, 2013, through to and including February 8, 2017, and terminated benefits effective February 9, 2017. The WCJ held Employer liable for reasonable and necessary medical expenses incurred during this period but ruled Employer is not liable for any treatment after February 9, 2017. The WCJ dismissed Claimant's Review Petition. From this decision, both Employer and Claimant sought review with the Board, which affirmed. Claimant and Employer then filed the instant cross-petitions.

10

## II. Issues

On appeal,[4] Claimant contends that the WCJ misplaced the burden of proof on Claimant to prove an ongoing disability. Because Employer filed a late answer, Claimant maintains that she was entitled to a presumption that her disability continued and the burden was on Employer to overcome that presumption. In addition, Claimant asserts that Employer did not offer competent evidence to rebut the presumption of ongoing disability or the onset of psychological injuries. The testimony of Employer's medical expert, Dr. Senter, was not legally competent to sustain Employer's burden because he refused to accept Claimant's recognized work injury. Therefore, the WCJ's determination to terminate benefits as of February 9, 2017, and to deny her Review Petition are not supported by competent substantial evidence.

Employer counters that the WCJ erred by applying *Yellow Freight* on the basis that Claimant waived this issue by not raising it in a timely manner before the WCJ, thereby prejudicing Employer's defense. Otherwise, Employer maintains that the WCJ's decision is supported by substantial, competent evidence.

## III. Discussion
### A. *Yellow Freight*

Claimant's first issue and Employer's counter issue regarding the applicability of *Yellow Freight* are intertwined. Claimant argues that the WCJ erred by placing the burden on her to prove an ongoing disability after September 19, 2016. Pursuant to *Yellow Freight* and progeny, when an answer is filed late, all well-

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Frankiewicz v. Workers' Compensation Appeal Board (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 n.2 (Pa. Cmwlth. 2017).

11

pled allegations in a claim petition are deemed admitted and the claimant is entitled to a rebuttable presumption of ongoing disability benefits after the last date on which the answer could have been filed. Because Employer failed to file a timely Answer, it was Employer's burden to produce competent medical evidence to rebut the presumption of ongoing disability.

Employer counters that Claimant waived the *Yellow Freight* issue by not timely raising it before the WCJ. The first time the issue was raised was at the fifth hearing held on March 23, 2018,[5] which was 18 months after Claimant filed her Claim Petition and 13 months after Employer's medical examination in defense of the claim. Relying upon *Smale v. Workers' Compensation Appeal Board (Dana Corp.)* (Pa. Cmwlth., No. 696 C.D. 2014, filed July 30, 2015), Employer maintains that Claimant waived the issue and is not entitled to any deemed admissions.

Section 416 of the Act requires an adverse party to file an answer to a claim petition within 20 days of service. 77 P.S. §821. "If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the [WCJ] hearing the petition shall decide the matter on the basis of the petition and evidence presented." *Id.* As interpreted in *Yellow Freight*, this means that the WCJ shall decide the matter on the allegations on the face of the claim petition, which are deemed admitted, and the evidence presented by the claimant. *Straub v. Workmen's Compensation Appeal Board (City of Erie)*, 538 A.2d 965, 967 (Pa. Cmwlth. 1988), *aff'd*, 598 A.2d 27 (Pa. 1991); *see Yellow Freight*, 423 A.2d at 1127. However, a claimant does not have to corroborate the admitted factual allegations. *Rite Aid Corp. v. Workers' Compensation Appeal Board (Bennett)*, 709

---

[5] A total of seven hearings were held: October 27, 2016, January 9, 2017, June 28, 2017, November 8, 2017, March 23, 2017, June 1, 2018, and February 8, 2019.

12

A.2d 447, 449 (Pa. Cmwlth. 1998); *Heraeus Electro Nite, Co. v. Workmen's Compensation Appeal Board (Ulrich)*, 697 A.2d 603, 608 (Pa. Cmwlth. 1997).

Under *Yellow Freight*, because every factual allegation asserted in the claim petition is admitted as true, the employer is barred from presenting any affirmative defenses or evidence to rebut the facts deemed admitted. *Heraeus*, 697 A.2d at 608; *Straub*, 538 A.2d at 967. However, an employer is not precluded from offering evidence in rebuttal to facts that a claimant did not specifically allege in a claim petition. *Heraeus*, 697 A.2d at 608. Further, an unexcused late answer admits facts, but not legal conclusions. *Bensing v. Workers' Compensation Appeal Board (James D. Morrissey, Inc.)*, 830 A.2d 1075 (Pa. Cmwlth. 2003). As we explained in *Heraeus*, an employer's failure to timely file an answer to a claim petition is not the equivalent of a default judgment. *Heraeus*, 697 A.2d at 608. "[A]n employer [that] files a late answer is still entitled to an opportunity to prove events, such as changes in disability, that may have occurred *after the last day when the late answer should have been filed*." *Rite Aid*, 709 A.2d at 449 (emphasis added); *accord Heraeus*, 697 A.2d at 608.

In support of its position that Claimant waived the *Yellow Freight* issue and, consequently, is not entitled to any admission of facts pled in the Claim Petition, Employer relies on *Smale*.[6] In *Smale*, this Court held that because the *Yellow Freight* issue was not raised before the WCJ, it was waived. Critically, we noted, "not only did Claimant fail to raise this issue at the initial WCJ hearing, he did not raise it at either of the following two WCJ hearings." *Smale*, slip op. at 8. Indeed, it is the

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa. R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a), unreported panel decisions of this Court filed after January 15, 2008, may be cited for their persuasive value. *Smith v. Philadelphia Office of Judicial Records*, 240 A.3d 673 (Pa. Cmwlth. 2020).

13

failure to raise the issue at all before the agency that triggers waiver. *See* Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. §703(a) (stating that "[a] party [that] proceeded before a Commonwealth agency under the terms of a particular statute . . . may not raise upon appeal any . . . question [other than the validity of the statute] not raised before the agency. . . ."); Pa. R.A.P. 1551(a) (stating general rule that "[o]nly questions raised before the government unit shall be heard or considered," with limited exceptions).

Such is not the case here because Claimant raised the *Yellow Freight* issue on the record before the WCJ, albeit at a later stage of the proceeding. Although Employer claims it was prejudiced by the delay, it does not describe how. We note that both of Employer's medical witnesses, Drs. Senter and Wettstein, testified by deposition months *after* Claimant's counsel raised the *Yellow Freight* issue at the March 23, 2018 hearing,[7] thereby giving Employer ample time to develop its defense accordingly. We, therefore, conclude that the *Yellow Freight* issue was preserved, and we reject Employer's arguments to the contrary.

We next address whether the WCJ properly applied *Yellow Freight.* Because Employer filed an untimely answer without adequate excuse, the WCJ properly treated all averments in the Claim Petition as admitted pursuant to *Yellow Freight*. The admitted allegations are that Claimant sustained cervical, lumbar spine, and left knee injuries, as well as an aggravation of preexisting degenerative joint disease after she fell at work in 2012 and experienced repetitive trauma from continuing work activity through August 8, 2013; the physical injuries disabled her from performing her preinjury job; her last day of work was August 8, 2013; and she

---

[7] Dr. Senter was deposed on September 6, 2018; Dr. Wettstein was deposed on December 4, 2018. R.R. at 182a; 392a.

14

provided notice to Employer on August 8, 2013. R.R. at 1a-3a. Claimant also alleged that she was disabled as of August 9, 2013, and "ongoing." R.R. at 3a.

Despite these deemed admissions, the WCJ placed the burden on Claimant "to prove by a preponderance of evidence that she continues to be entitled to benefits on and after the September 19, 2016 filing date." F.F. No. 13. Pursuant to *Yellow Freight*, Claimant was entitled to the presumption of an ongoing disability as a result of her work-related injury. *Heraeus*, 697 A.2d at 609 n.10. It was Employer's burden to rebut this presumption. *Id.* In this regard, we conclude that the WCJ erred.

As for whether the misplacement of the burden of proof constitutes harmless error or reversible error depends upon whether a different result would have been reached had the burden been correctly placed. *City of Philadelphia v. Civil Service Commission*, 824 A.2d 346, 349 (Pa. Cmwlth. 2003), *aff'd*, 879 A.2d 146 (Pa. 2005); *see Durbin v. Workers' Compensation Appeal Board (Pennsylvania Hospital of the University of Pennsylvania Health System)* (Pa. Cmwlth., No. 289 C.D. 2016, filed November 21, 2016). Upon review, the record and the WCJ's findings of fact demonstrate that the outcome would not have changed had the WCJ properly placed the burden of proof on Employer because Employer presented rebuttal evidence, which the WCJ credited. Specifically, Employer's expert, Dr. Senter, testified that Claimant had fully recovered from her work-related injury as of his examination on February 9, 2017. Based upon this testimony, the WCJ found that, as of February 9, 2017, Claimant no longer suffered from "any impairment or disability from a work[-]related aggravation of her pre-existing condition" and that "her symptoms were now related to that pre-existing condition only." F.F. No. 15. Although the WCJ erred by placing the burden on Claimant to prove an ongoing

15

disability, the WCJ's misplacement of the burden was harmless under the circumstances here because Employer had otherwise presented rebuttal evidence that Claimant had fully recovered from her work injury. The question remaining is whether Employer's evidence was legally competent to satisfy its burden.

**B. Competent Medical Evidence**

Although Claimant concedes that the misapplication of the burden of proof may constitute harmless error, Claimant contends that Employer's evidence was not legally competent to support the suspension of benefits for her ongoing physical disability or the denial of her Review Petition to include a psychological disability. The reason, Claimant asserts, is that Dr. Senter did not recognize or accept all of her established work injuries in rendering his opinion of full recovery. In fact, Dr. Senter specifically rejected that she sustained a work-related aggravation of her preexisting degenerative joint disease. Consequently, his testimony is insufficient evidence to prove full recovery from all work-related injuries that Employer admitted by virtue of its untimely Answer, which was necessary to rebut the presumption of her ongoing disability.

Employer again complains that Claimant's competency argument, which is premised on the *Yellow Freight* issue, was not raised until March 23, 2018. Employer notes that no competency objection was made during Dr. Senter's deposition taken on September 6, 2018, when the deposition was offered into evidence, or at the conclusion of the WCJ's proceedings.

It is well settled that "'in a claim [petition] proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award,' . . . and that an employer's failure to file a timely

16

answer does not automatically satisfy the claimant's burden of proof." *Rite Aid*, 709 A.2d at 449 (quoting *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993)).  As discussed above, where the claimant alleges necessary facts to support an award, and the employer has admitted those allegations, the claimant is entitled to a "rebuttable presumption which will sustain her burden of proof of a continuing disability from the last date the answer should have been filed *throughout the pendency of the ligated matter, thus satisfying the claimant's burden under Inglis House . . . .*"  *Heraeus*, 697 A.2d at 609 n.10 (emphasis added).  It is the employer's burden of proving any changes in disability "after the last date its answer to the claim petition could have been timely filed." *Id.*; *accord Rite Aid*, 709 A.2d at 449.

When an employer seeks a termination of benefits, the employer must prove that the claimant's work injury has ceased.[8]  *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006).  An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries.  *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008); *GA & FC Wagman, Inc. v.*

---

[8] Although Employer did not file a termination petition, our analysis as to whether the WCJ and Board properly terminated Claimant's benefits is the same as if Employer had filed a termination petition. *See Frontini v. Workers' Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8 (Pa. Cmwlth. 1997) (holding that employer need not file a termination petition when claimant is on notice that the employer is seeking termination of benefits); *see also Durbin v. Workers' Compensation Appeal Board (Pennsylvania Hospital of the University of PA Health System)* (Pa. Cmwlth., No. 289 C.D. 2016, filed November 21, 2016) (holding employer's burden of proof to terminate benefits, whether by filing a termination petition or rebutting an established ongoing disability in the context of a claim petition, is the same).

*Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087, 1091 (Pa. Cmwlth. 2001). The employer's medical expert must, at a minimum, acknowledge an accepted or established work injury. *Sarmiento-Hernandez v. Workers' Compensation Appeal Board (Ace American Insurance Co.)*, 179 A.3d 105, 110-11 (Pa. Cmwlth. 2018). "[A] medical expert's opinion will not support a termination if that medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries"). *Hall v. Workers' Compensation Appeal Board (American Service Group)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010); *see also Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 997 (Pa. Cmwlth. 2005) (holding termination petition based "solely on testimony that failed to acknowledge the established work injury" was insufficient to support a termination petition); *Central Park Lodge v. Workers' Compensation Appeal Board (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998) (holding that where the employer's medical expert failed to address one of claimant's injuries, his testimony was insufficient, as a matter of law, to terminate benefits).

As a result of Employer's deemed admissions under *Yellow Freight*, Claimant's disability for cervical, lumbar spine, and left knee injuries and an aggravation of preexisting degenerative joint disease was established and presumed to be ongoing. For Employer to rebut this presumption, Employer was required to offer evidence that Claimant had fully recovered from *all* work-related injuries.

Employer's rebuttal evidence fell short of its burden. Dr. Senter opined that Claimant sustained a work-related injury in the nature of a cervical sprain and strain, from which she fully recovered. R.R. at 213a-15a. However, Dr. Senter did not accept, and, in fact, specifically rejected, that Claimant had suffered an

18

aggravation of her preexisting condition of degenerative joint disease. R.R. at 215a-16a. When asked whether her work activity between February 2012 and August 2013 aggravated her preexisting condition, Dr. Senter opined:

> Not specifically that work activity, but it's the nature of degenerative disc disease to progress absent the nature of the work. . . . So I don't think that it's reasonable for somebody who had education, training and experience specifically in treating cervical degenerative disc disease for anyone who has those three pillars to say that sitting at a computer moving a mouse specifically accelerates already symptomatic and already radiographically present cervical degenerative disc disease. . . . There's no neurosurgical study that has ever shown that sitting at a desk using a mouse accelerates already present cervical degenerative disc disease. That is just factually and medically not a correct medical statement.

R.R. at 215a-17a. Dr. Senter further testified that the February 2012 work incident would not cause a herniated disc. R.R. at 219a. Dr. Senter opined that Claimant's February 2012 injury and continuing work activity did not "aggravate, accelerate or exacerbate her pre-existing condition." R.R. at 220a.

Ultimately, Dr. Senter did not accept that Claimant had sustained an aggravation of a preexisting condition even though that allegation was set forth in the Claim Petition and was deemed admitted by Employer. Employer was barred from presenting evidence to rebut the facts deemed admitted. *Heraeus*, 697 A.2d at 608; *Straub*, 538 A.2d at 967. The WCJ specifically found as fact that Claimant had sustained an aggravation of a preexisting degenerative condition.

By refusing to accept that Claimant sustained an aggravation of a preexisting degenerative condition, it was not possible for Dr. Senter to give an opinion that Claimant had fully recovered from that injury. *See Hall*, 3 A.3d at 740; *GA & FC Wagman, Inc.*, 785 A.2d at 1091. Dr. Senter's testimony that Claimant

19

had fully recovered from a cervical sprain and strain is not sufficient evidence upon which to conclude that Claimant had fully recovered from the aggravation of her preexisting degenerative condition. Consequently, Employer did not succeed in rebutting the presumption of ongoing disability. Thus, we conclude that the WCJ erred by finding that Claimant had fully recovered from her work injury as of February 9, 2017, limiting the award of compensation to a closed period, and terminating Claimant's benefits effective February 9, 2017.

As for Claimant's Review Petition, the WCJ denied the Review Petition on the basis that Claimant had fully recovered from all work-related physical injuries and, as a result, her psychiatric problems could not be related to her work injury. Specifically, the WCJ found that, although Claimant "appears" to "have a psychological impairment due to the physical symptoms she is experiencing . . . that impairment cannot be related to the work injury" because Claimant "fully recovered from that work injury as of February 9, 2017." F.F. No. 16. Because there is no competent support for the WCJ's finding that Claimant fully recovered from her established work injury, the WCJ's finding that Claimant's psychological impairment is not related to the work injury fails by extension.

Although both Drs. Breisinger and Wettstein opined that Claimant has a psychological impairment as a result of her ongoing physical symptoms, the WCJ did not make specific credibility determinations regarding their testimony or findings regarding the nature of her mental impairment and relation to the work injury. We, therefore, find it necessary to remand to the WCJ to render necessary findings of fact and conclusions of law regarding Claimant's Review Petition.

20

## IV. Conclusion

For the foregoing reasons, we conclude that the WCJ properly applied *Yellow Freight* by deeming admitted all the facts alleged in Claimant's Claim Petition, including that she sustained an ongoing disability in the nature of an aggravation of preexisting degenerative joint disease. However, the WCJ erred by improperly placing the burden on Claimant to prove the continuing nature of her disability and by relying on incompetent medical evidence in determining that Claimant had fully recovered from her work injury as of February 9, 2017. Thus, we conclude that the WCJ erred by limiting the award of the Claim Petition to a closed period ending February 9, 2017.

In addition, the WCJ erred by denying Claimant's Review Petition seeking to include a psychological impairment to her injury on the basis that she had fully recovered from any physical disability related to her work injury. Because the WCJ did not make necessary findings of fact and conclusions of law regarding the Review Petition to allow meaningful appellate review, a remand is necessary.

Accordingly, we reverse the Board's decision insofar as it affirmed the WCJ's award of Claimant's Claim Petition limited to a closed period of disability and terminated her benefits effective February 9, 2017. We vacate the Board's decision insofar as it affirmed the WCJ's denial of Claimant's Review Petition, and we remand this matter to the Board with instructions to further remand to the WCJ to reconsider Claimant's Review Petition and render necessary findings of fact and conclusions of law and issue a new decision in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joanne DeSue, : 
                            : 
              Petitioner : 
                            : 
          v. : No. 151 C.D. 2021
                            : 
Bank of America (Workers' : 
Compensation Appeal Board), : 
                            : 
             Respondent : 

Bank of America, : 
                            : 
              Petitioner : 
                            : 
          v. : No. 183 C.D. 2021
                            : 
Joanne DeSue (Workers' : 
Compensation Appeal Board), : 
                            : 
             Respondent : 

# **O R D E R**

**AND NOW**, this 21st day of April, 2022, the January 29, 2021 order of the Workers' Compensation Appeal Board (Board) is **REVERSED IN PART** insofar as it affirmed the Workers' Compensation Judge's (WCJ) award of Joanne DeSue's (Claimant) Claim Petition limited to a closed period of disability and terminated her benefits effective February 9, 2017, and **VACATED IN PART** insofar as it affirmed the WCJ's denial of Claimant's Review Petition. This matter is **REMANDED** to the Board with instructions to further remand to the WCJ to reconsider Claimant's Review Petition and to render necessary findings of fact and

conclusions of law and issue a new decision in accordance with the foregoing opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge

2