**GA & FC WAGMAN, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Aucker), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2001.

Decided Oct. 30, 2001.

Jennifer Chun Strawn, Philadelphia, for petitioner.

Lester Krasno, Pottsville, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

GA & FC Wagman, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which reversed the decision of a Workers' Compensation Judge (WCJ) granting Employer's Termination Petition. We affirm.

Pursuant to a Notice of Compensation Payable (NCP), Joseph Aucker (Claimant) began receiving benefits for an injury described as "exacerbation of pseudoarthrosis L4–5" that occurred on July 25, 1990.[1]

---

1. Pseudoarthrosis, or pseudarthrosis, is a    "new, false joint arising at the site of an

Thereafter, Employer filed a Termination Petition alleging that, as of December 9, 1997, Claimant fully recovered from his work-related injury. Claimant filed an Answer denying the allegations set forth in Employer's Termination Petition.

At the hearings before the WCJ, Claimant testified that he began working for Employer in 1973. On January 26, 1981, he sustained a back injury for which he received compensation benefits. Claimant was treated for his injuries by Michael Dawson, M.D., who performed an interior diskectomy and spinal fusion surgery at the L4–5 level in 1982. Claimant returned to work for Employer a year after this surgery as a concrete technician/laborer. On July 25, 1990, Claimant was working on a bridge drilling holes through concrete. In order to perform this job, Claimant was suspended from a "spider machine." Claimant testified that his co-workers "saw that the cable was kind of crooked, and they pulled on it to straighten it out, and that is when it jerked my back and I fell down on the steel rebars...." (N.T. 7/01/98, p. 14). Claimant injured his chest and back in this fall and returned to limited duty work sometime in 1992. Claimant testified that Employer gave him a "hard time" about his work restrictions and that he had to have Dr. Dawson contact Employer several times before his work restrictions were complied with. In 1995, Claimant was laid off and Employer has not called him back to work. Claimant also testified that he has sent out numerous resumes in an attempt to get another job but that he has not been successful. He also attended college for approximately two years but had to quit when he was no longer eligible for financial aid.

Claimant also presented the testimony of Dr. Dawson. He explained that pseudoarthrosis can occur when two discs are fused together. Although there is not a solid bony union between the discs, there is a very strong fibrous union. However, because there is almost no blood supply to this fibrous union, there is almost no potential for healing when this area is damaged. Dr. Dawson testified that Claimant tore this fibrous tissue in his work-related accident of July 25, 1990 and that this is the cause of his current disability (N.T. 5/13/98, pp. 13–14).

Employer presented the testimony of Vernon R. Morris, Jr., M.D., who examined Claimant on November 19, 1997. Dr. Morris testified that the tests he performed suggested that Claimant was fabricating his symptoms. When questioned about the nature of Claimant's work-related injury, Dr. Morris testified that Claimant sprained the muscle ligaments in his back during the July 25, 1990 work-related accident and that this injury has resolved. Additionally, he testified that Claimant also suffers from multiple level degenerative lumbar disc disease. As to Claimant's pseudoarthrosis, Dr. Morris determined that there is possible pseudoarthrosis at the L4–5 region as a result of the fusion procedure. He also testified that "I agree there is a pseudoarthrosis that I think is of no consequence here." (N.T. 4/08/98, p. 57). Dr. Morris also concluded that Claimant has recovered from his work-related injuries.

By decision and order dated May 3, 1999, the WCJ accepted the testimony of Claimant as generally credible. He also accepted the testimony of Dr. Morris as credible and rejected the testimony of Dr. Dawson to the extent that it contradicted the testimony of Dr. Morris. In the "Discussion" section of his opinion, the WCJ noted that:

ununited fracture." Stedman's Medical Dictionary 1449 (26th ed.1995).

This Workers' Compensation Judge is aware that a medical opinion based upon assumed facts which are inconsistent with what have been previously found to be a fact in a prior final decision is an opinion "that is worthless". *Noverati v. WCAB (Newtown Squire Inn)*, 686 A.2d 455 (Pa.Cmwlth.1996). Although the description of an injury on the Notice of Compensation Payable is very significant, such an acknowledgment is not identical to a finding of fact in a prior decision. Furthermore, for the reasons indicated in paragraph 11 b and paragraph 15 above, this Workers' Compensation Judge does not believe that Dr. Morris's opinion concerning what occurred on July 25, 1990, is really inconsistent with the general nature of the injury as described on the Notice of Compensation Payable so as to render his overall opinion that the Claimant's problems are related to degenerative disc disease and not the July 25, 1990 work injury to be legally "worthless."

Accordingly, the WCJ concluded that Employer sustained its burden of proving that Claimant fully recovered from his July 25, 1990 work injury. Claimant appealed to the Board, which reversed the decision of the WCJ. The Board determined that the WCJ erred by relying on the testimony of Dr. Morris because he did not testify that Claimant fully recovered from "exacerbation of pseudoarthrosis", which is the injury acknowledged by the NCP. This appeal followed.[2]

Employer argues that the Board erred by: 1) reversing the WCJ's decision on grounds that were not raised by Claimant in his appeal or brief; and 2) determining that the opinion of Dr. Morris was not

sufficient to support a termination of Claimant's benefits.

In its brief, Employer argues that, because Claimant did not raise the issue of the sufficiency of Employer's medical evidence in his brief, he has waived this argument. In support of its argument, Employer cites Pa. R.A.P. 1551(a), which states that "[n]o question shall be heard or considered by the court which was not raised before the government unit. . . .".

■ It is well settled that issues not raised before the Board are waived and cannot be raised for the first time before this Court. *Myers v. Workers' Compensation Appeal Board (Family Heritage Restaurant)*, 728 A.2d 1021 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 560 Pa. 714, 743 A.2d 925 (1999). However, a review of the record indicates that this is not the case here. On the Notice of Appeal to the Board, Claimant states, under the "Errors of Law" section, that "[t]he expert medical testimony of Dr. Morris which was accepted as dispositive of the issues raised by the [Employer] does not and cannot constitute substantial evidence in support of the WCJ Decision terminating compensation benefits for multiple reasons. . . ." Because it is clear that Claimant did raise the issue of the sufficiency of Employer's medical evidence, Employer's argument that this issue is waived is without merit.

■ As to Employer's argument that Claimant has waived this issue because he failed to raise it in his brief to the Board, Claimant admits that this issue was not raised in his brief. However, this Court has held that the failure of a party to raise

---

2. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

an issue in a brief filed at the administrative level, or even the failure to file any brief at all, does not waive an issue that has been properly preserved in the Notice of Appeal filed with the Board. Pa. R.A.P. 1551(a) requires only that a question be raised before the government unit, and not that it be briefed. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182, 184 (Pa.Cmwlth.1998). Therefore, because Claimant raised the issue in his Notice of Appeal to the Board, this Court may properly consider the issue of whether the testimony of Dr. Morris is sufficient to support a termination of Claimant's benefits.

The question before this Court can be summarized as follows: Can a WCJ terminate a claimant's benefits based on the testimony of a medical expert who does not believe that the injury acknowledged in the NCP ever occurred?

■ In a termination proceeding, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997). The employer meets this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Id.*

In support of his position, Claimant relies on the case of *Central Park Lodge v. Workers' Compensation Appeal Board (Robinson)*, 718 A.2d 368 (Pa.Cmwlth. 1998 ). In that case, a workers' compensation judge issued a decision finding that the claimant suffered injuries to his neck, back and head. Thereafter, the employer filed a termination petition which was granted by a workers' compensation judge. However, the Board reversed the decision of the WCJ. This Court agreed with the Board, holding that the testimony of the employer's medical expert that the claimant fully recovered was insufficient as a matter of law because he failed to address the claimant's head injury, which was an injury found to exist by a workers' compensation judge and set forth in the findings of fact of the previous decision.

In the case *sub judice*, Employer argues that, because Dr. Morris acknowledged that Claimant has pseudoarthrosis and because he examined the exact same area of Claimant's body that was injured in the work-related accident, his opinion that Claimant recovered from his work-related injury is sufficient to support a termination of benefits. Employer also argues that the NCP describes the injury generally as an exacerbation in the area where Claimant has a pseudoarthrosis and that it was appropriate for Dr. Morris to testify about the extent of this exacerbation by opining that the nature of the injury on July 25, 1990 was in fact a muscular sprain from which Claimant has recovered. We disagree.

Section 407 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, provides that:

> All **notices of compensation payable** and agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination thereof .... **shall be valid and binding unless modified or set aside** as hereinafter provided.

77 P.S. § 731 (emphasis added). Additionally, Section 413(a) of the Act, provides that:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable .... upon petition filed by either party with the department, or in the course of the

proceedings under any petition pending before such workers' compensation judge, **if it be proved that such notice of compensation payable .... was in any material respect incorrect.**

77 P.S. § 771 (emphasis added).

 These portions of the Act ensure that, when an employer seeks to terminate a claimant's benefits, neither party can relitigate the nature of the accepted injury at a subsequent proceeding without first following the proper procedure, which is to file a Review Petition and seek to have the description of the injury changed. *See Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 332, 728 A.2d 902, 905 (1999). The WCJ may also "in the course of the proceedings" determine that the NCP was incorrect.

■ However, that procedure was not followed here. Employer never filed a Review Petition and the WCJ never found that the NCP was materially incorrect. Rather, the WCJ found that the opinion of Dr. Morris concerning what occurred on July 25, 1990 was not inconsistent "with the general nature of the injury as described in the Notice of Compensation Payable." However, the NCP did not generally describe the injury. Rather, the NCP specifically describes the injury as "exacerbation of pseudoarthrosis L4–5", not an exacerbation in the area of L4–5, and not a muscular sprain. Exacerbation of pseudoarthrosis, or fibrous union, is the injury that Employer has acknowledged through issuance of the NCP that Claimant suffers from and, in order to terminate Claimant's benefits, it must submit medical evidence proving that Claimant has recovered from this injury. The medical evidence presented by Employer, however, is inconsistent with the NCP because Dr. Morris does not recognize that Claimant ever suffered from "exacerbation of pseudoarthrosis" on July 25, 1990. Therefore,

it is impossible for Dr. Morris to give an opinion that Claimant has fully recovered from that injury. Like *Central Park Lodge,* in the case *sub judice* Dr. Morris failed to determine whether or not Claimant has recovered from the accepted injury. The fact that the nature of Claimant's injury was established in the NCP rather than in a finding of fact is of no consequence, because Section 407 of the Act states that NCPs "shall be valid and binding unless modified or set aside." Therefore, the testimony of Dr. Morris is not sufficient to support a termination of Claimant's benefits.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, October 30, 2001, the order of the Workers' Compensation Appeal Board docketed at A99–1444 and dated February 6, 2001 is hereby AFFIRMED.