**Denise ELBERSON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ELWYN, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 25, 2007.

Decided Sept. 10, 2007.

Publication Ordered Nov. 7, 2007.

---

Thomas F. Sacchetta, Media, for petitioner.

Mary S. Kohnke Wagner, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Denise Elberson (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting Elwyn, Inc.'s (Employer) termination petition.

Employer, an organization that provides services to individuals with special needs, employed Claimant as a program supervisor placing her in charge of various aspects of client care. On March 17, 2001, while making her rounds, Claimant sustained a work-related injury to her back when she lifted a client off the floor and back into his walker. Employer issued a notice of compensation payable on April 5, 2001, defining Claimant's work injury as a

herniated nucleus pulposus at L4–5 (HNP at L4–5), and she began receiving benefits in accordance with the Workers' Compensation Act.[1] On June 9, 2004, Employer filed a termination petition alleging that Claimant had fully recovered from her work-related injury as of November 19, 2003. Claimant filed an answer denying Employer's allegations, and the matter was assigned to a WCJ for a hearing.

To establish that Claimant had fully recovered from her work-related injury, Howard H. Steel, M.D. (Dr. Steel), who was board certified in orthopedic surgery, testified that when he examined Claimant, she complained of low back pain, numbness on the right outer aspect of her calf, cramping in her toes, and cramps in her hamstrings. Following the examination, though, Dr. Steel stated that he observed that Claimant had excellent motion of her back and normal reflexes. He went on to state that the results of the sitting and supine straight leg exam were inconsistent in that Claimant experienced pain when raising her leg in the supine position but was unaffected when doing so in the sitting position. Dr. Steel testified that the results should have been the same regardless of corporal position.

Dr. Steel also testified that he reviewed two MRIs that Claimant underwent in March 2001 and August 2002. With regard to the March 2001 report, he stated that she had "bulging discs from the top to bottom" of her spine that he believed preexisted the March 17, 2001 injury. (Reproduced Record at 72a.) He went on to testify that the August 2002 report showed that the herniated disc at L5–S1 was better. He also testified that while an EMG indicated radiculopathy at L5–S1, he was unable to discover signs or symptoms of radiculopathy during Claimant's examination.

Based on his assessment of her condition, Dr. Steel opined, without mentioning Claimant's HNP at L4–5, that Claimant had fully recovered from her work injury because no evidence suggested that she had a herniated disc. He released her to work full duties in her position as program supervisor but stated that she should not lift anything based on the positive findings on the MRI and EMG and a possible previously diagnosed herniated disc, all of which he attributed to pre-existing conditions.

In opposition, Claimant testified that before her injury, she did not experience back problems, but after it occurred, she received four epidurals, two EMGs, physical therapy, pain management and home exercises. Claimant stated that she was unable to return to work because she was not able to perform her job at her pre-injury level. She admitted, though, that she would return to work if a position opened up with Employer that did not require lifting.

Claimant also offered the testimony of William C. Murphy, D.O. (Dr. Murphy), who was board certified in the field of physical medicine and rehabilitation. He testified that Claimant had back pain, weakness in the muscles in her right lower extremities, and pain which radiated down to her right leg. Upon reviewing her MRI reports, he determined that Claimant had multiple level disc protrusions at L3–4 and L4–5, with a herniated disc at L5–S1 that he opined was the source of her radiculopathy. Specifically, Dr. Murphy concluded that based on the March 2001 MRI, the disc protrusions were directly attributable to the March 17, 2001 injury. Dr. Murphy also stated that two EMGs performed on Claimant in April 2003 and June 2004 re-

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

vealed a right L5–S1 radiculopathy of a mild to moderate severity. He diagnosed Claimant with a herniated lumbar disc at multiple levels, particularly at L3–4 through L5–S1, and a right lumbar radiculopathy. He then opined that because her job as program supervisor involved lifting, she would be unable to return to her pre-injury duties and restricted Claimant to lifting no greater than 10 pounds occasionally and five pounds frequently.

Finding Dr. Steel's testimony to be credible, the WCJ concluded that Claimant had fully recovered from her work injury as of November 17, 2003, and could return to work at full-duty with no restrictions related to that injury. She reasoned that Dr. Steel was unable to find orthopedic or neurological abnormalities that could be objectively correlated to Claimant's subjective complaints, and the lifting restrictions he imposed were based on the positive findings of diagnostic studies of a previously diagnosed disc disease. The WCJ found Dr. Murphy's testimony unpersuasive because he failed to offer an opinion on whether Claimant had fully recovered from her work injury and merely stated that she could not return to her pre-injury job. The WCJ also found Claimant's testimony not credible because her subjective complaints of pain were not consistent with any identifiable neurological or physiological causes. Concluding that Employer met its burden of proving that Claimant's

work-related injury ceased, the WCJ granted its termination petition.

■ Claimant appealed to the Board arguing that Dr. Steel's testimony was insufficient to support the termination petition because he failed to address the injury described in the notice of compensation payable, the HNP at L4–5. She also claimed that because he opined that she could not perform the lifting requirements of her pre-injury job, his testimony was not sufficient to establish that she had fully recovered from her work-related injury. The Board, however, found that even though he never addressed the work-related injury, Dr. Steel clearly stated that his examination revealed no evidence of an orthopedic or neurological disease or a herniated disc. In addition, the Board reasoned that Dr. Steel's lifting restrictions were not based on any objective medical findings but on Claimant's own subjective reports of pain. It affirmed the WCJ's termination of Claimant's benefits, and this appeal followed.[2]

■ Claimant contends, as she did before the Board, that the WCJ erred in granting Employer's termination petition[3] because Dr. Steel failed to acknowledge the exact injury indicated in the notice of compensation payable, the HNP at L4–5, and testify that Claimant had fully recovered. She maintains that without unequivocally establishing that she had recovered

2. Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *City of Scranton v. Workers' Compensation Appeal Board (Roche),* 909 A.2d 485 (Pa.Cmwlth.2006).

3. In a termination proceeding, the employer bears the burden of establishing that the claimant has fully recovered from her work-related injury. *Schachter v. Workers' Compen-*

*sation Appeal Board (SPS Technologies),* 910 A.2d 742 (Pa.Cmwlth.2006). An employer may satisfy its burden by offering unequivocal medical evidence which establishes with a reasonable degree of medical certainty that the claimant has fully recovered, can return to work without restrictions, and there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. *Udvari v. Workers' Compensation Appeal Board (USAir),* 550 Pa. 319, 705 A.2d 1290 (1997).

from the designated injury, Employer was unable to meet its burden to terminate her benefits. Employer counters that even though Dr. Steel testified that he believed Claimant had sustained a lumbar sprain or strain, he also did not disagree that she sustained a herniated disc, and his testimony demonstrated that no objective evidence existed which would have substantiated that Claimant continued to suffer from her alleged disability.

 To terminate benefits, an employer's expert must recognize the work injury as described in the notice of compensation payable and opine that the claimant has fully recovered from that injury. *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker),* 785 A.2d 1087 (Pa.Cmwlth.2001). For example, in *Wagman,* the claimant was awarded benefits pursuant to a notice of compensation payable that listed his injury as an "exacerbation of pseudoarthrosis L4–5." Subsequently, the employer sought to terminate benefits, and before the WCJ, it offered expert testimony that failed to acknowledge that the claimant ever suffered from the injury listed in the notice, but stated that he had fully recovered from any work injury. Finding this testimony to be credible, the WCJ granted the employer's termination petition but the Board reversed. On appeal, we affirmed the Board's decision holding that the testimony of a medical expert could not support a termination of benefits where the doctor failed to determine whether the claimant had recovered fully from the accepted injury listed in the notice of compensation payable. Because the employer's expert did not recognize that the claimant suffered from the injury set forth in the notice, we concluded that it would have been impossible for him to find that the claimant fully recovered from that particular injury. *See also Gillyard v. Workers'*

*Compensation Appeal Board (Pennsylvania Liquor Control Board),* 865 A.2d 991, 996 (Pa.Cmwlth.2005) (where medical expert testified that claimant's back was normal but failed to address the work-related injury, we held that testimony to be insufficient to support a termination of benefits).

In the present matter, for Employer to be successful in terminating benefits, it had to submit medical evidence proving that Claimant had recovered from her work-related injury—the HNP at L4–5. Although Dr. Steel opined that Claimant had recovered from her work injury, he did so without knowing what the work injury was:

Q: Did you find that she was fully recovered from that work injury?

A: Since I couldn't find any abnormality, I would have to say she had gotten better, yes.

Q: And do you have any further explanation, aside from what you've already given, as to any other reason why you felt that she was fully recovered from what you understood her injury to be, a lumbar strain and sprain?

A: I don't understand the question.

Q: Let me ask you this: What did you understand her work injury to be?

A: I understood—I knew it occurred. **I didn't know what her work injury was. But I would infer from what I saw her, when I saw her, that she had a sprain or strain of her back.** And I could find no evidence or any residual thereof or anything to suggest a herniated disc.

(Reproduced Record at 70a–71a.) (Emphasis added.)

In this case, Dr. Steel never recognized that Claimant suffered from the HNP at L4–5 because he thought that the work

injury was a sprain or strain of her back.[4] Even though he testified that there was no clinical evidence of any "abnormality" in Claimant's spine, without recognizing the specific work-related injury, Dr. Steel's opinion is insufficient to support that she had fully recovered from a specific work-related injury. *Aucker.* At a bare minimum, the expert must know what the accepted work-related injury was to be competent to testify that a claimant has fully recovered from a work-related injury. Accordingly, because the WCJ and the Board improperly relied on Dr. Steel's opinion in granting Employer's termination petition, the WCJ's order is reversed.[5]

## ORDER

AND NOW, this *10th* day of *September,* 2007, the order of the Workers' Compensation Appeal Board, No. A05–3027, is reversed.

## DISSENTING OPINION BY Judge LEAVITT.

I respectfully dissent. I agree with the WCJ and the Board that Dr. Steel's testimony supports a finding that Claimant fully recovered from her accepted work injury, which is undisputedly a herniated nucleus pulposus at L4–5.[1]

Dr. Steel is a board certified orthopedic surgeon who actually writes the board examinations and was the chief surgeon at Shriners Hospital for twenty-five years. In conjunction with Claimant's independent medical examination (IME), Dr. Steel took a history from Claimant regarding how her injury occurred and he reviewed Claimant's medical records including her injury report. Dr. Steel also noted that according to an MRI, Claimant had a herniated nucleus pulposus.

Claimant's physical examination was normal, with excellent motion of her back, normal reflexes and no signs of radiculopathy. Claimant voiced subjective complaints that were inconsistent with any known physiologic cause, and Dr. Steel could find no abnormality and nothing objective to substantiate Claimant's subjective complaints. In short, there was "nothing wrong" with Claimant. Steel Deposition, October 11, 2004, at 61 (Steel dep. ___); Reproduced Record at 92a (R.R. ___). Dr. Steel explained that Claimant had MRIs done in 2001 and 2002. The 2001 MRI showed a herniated disc at L5–S1 and the 2002 MRI showed that the herniated disc had gone away.[2] Dr. Steel

---

**4.** In *To v. Workers' Compensation Appeal Board (Insaco, Inc.),* 819 A.2d 1222 (Pa. Cmwlth.2003), we held that the testimony of employer's medical expert was sufficient to support a termination of benefits, notwithstanding the doctor's expressed belief that claimant never sustained the injury acknowledged in the notice of compensation payable. In reaching this conclusion, we distinguished the facts presented in *Wagman* because in *To,* the employer's expert specifically opined that the claimant had fully recovered from the accepted injury. *To* is inapplicable because Dr. Steel did not specifically address whether Claimant had recovered from the work-related injury because he did know what it was.

**5.** Claimant also argues that the WCJ erred because Dr. Steel credited her subjective complaints of pain and placed lifting restrictions on her job. Without demonstrating that the reason for those restrictions was related to a back condition that was totally independent from the work injury, she maintains that Employer has not proven that she is fully recovered. However, because of the manner in which we have resolved Claimant's first argument, we need not address the merits of her second argument.

**1.** Nucleus pulposus is defined as "the soft fibrocartilage central portion of the intervertebral disk." STEDMAN'S MEDICAL DICTIONARY at 1240 (27th ed.2000).

**2.** Dr. Steel explained that the diagnostic tests covered Claimant's spine "from the top to bottom." Steel dep. 41; R.R. 72a.

specified that upon physical examination, he found no clinical evidence of a herniated disc.

As to full recovery, the following exchange took place:

[Employer's Counsel:] ... do you have an opinion as to whether this lady was fully recovered from whatever happened to her on March 17, 2001?

[Dr. Steel:] I couldn't find any evidence of any orthopedic or neurologic disease when I saw her, the day that I saw her.

[Employer's counsel:] Did you find that she was fully recovered from that work incident?

[Dr. Steel:] Since I couldn't find any abnormality, I would have to say she had gotten better, yes.

\* \* \*

[Employer's counsel:] Let me ask you this: What did you understand her work injury to be?

[Dr. Steel:] I understood—I knew how it occurred. I didn't know what her work injury was. But I would infer from what I saw her, when I saw her, that she had a sprain or strain of her back. *And I could find no evidence or any residual thereof or anything to suggest a herniated disc.*

Steel dep. 38–39; R.R. 69a–70a (emphasis added).

Later in the deposition, Dr. Steel specifically testified as to the condition of Claimant's L4–5 disc, saying "[b]ut again, there were no symptoms at L4–5 at all and nothing subjective to show a disc any place." Steel dep. 69; R.R. 100a. On cross-examination, Dr. Steel was asked again about Claimant's full recovery:

[Claimant's counsel:] ... is it still your testimony that this lady is fully recovered from what happened in August (sic) of 2001?

[Dr. Steel:] When I saw her, I could find *no evidence of any orthopedic or neurologic disease at all.*

Steel dep. 73; R.R. 104a (emphasis added).

The majority concludes that Dr. Steel's medical opinion is insufficient to support a termination because he stated that he did not know what her work injury was but "inferred" that it was a lumbar strain. In support, the majority relies on *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth.2001) and *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991 (Pa.Cmwlth.2005). Both of these are distinguishable from the instant case.

In *Wagman*, the employer's medical expert failed to testify that the claimant was fully recovered from an exacerbation of pseudoarthrosis, which was the accepted work injury. In *Gillyard*, the employer's doctor stated that the work injury was only a lumbar strain/sprain when in reality the work injury also included chronic sciatica with disc bulging at L4–5 and L5–S1. Further, the employer's doctor specifically testified that he was not opining that the claimant was recovered from anything other than the lumbar strain/sprain. In *Wagman* and *Gillyard*, the testimony of the employers' medical experts was properly held insufficient to support a finding of recovery because their testimony was too limited in scope to include the claimant's accepted work-related injury. That is not the situation with Dr. Steel.

This case is more akin to *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222 (Pa.Cmwlth.2003), in which the IME doctor was unable to understand, based on the claimant's complaints and description of the mechanism of injury, how a work injury could have occurred. Nevertheless, the employer's

doctor testified that there was no connection between the claimant's current complaints and the work incident; no evidence of medical impairment; and therefore, the claimant had fully recovered from any work injury he may have sustained. This Court found that the testimony was competent and supported a finding of full recovery. *Id.* at 1225.

This case presents a similar situation. Although Dr. Steel inferred that Claimant had a lumbar strain or sprain based on what he saw during the IME, he never stated that his opinion of full recovery was limited to a lumbar strain/sprain. He never disputed but, rather, acknowledged that Claimant had sustained a herniated nucleus pulposus. Dr. Steel performed a thorough examination and reviewed diagnostic test results of the entire spine. He specifically looked for evidence of a herniated disc and testified that he found none. In fact, Dr. Steel found no objective evidence to support Claimant's subjective complaints and *no evidence of any orthopedic or neurologic disease at all.* He also specifically opined that Claimant fully recovered from any work-related injury to her back. This supports a finding of full recovery.

The majority holds that "the expert must know what the accepted work-related injury was to be competent to testify that a claimant has fully recovered from a work-related injury." Slip Opinion at 8. In other words, the majority would find that in any case where the IME physician is unsure of the accepted work injury, the doctor's testimony cannot support a finding of full recovery. I disagree with that broad assertion. A reading of Dr. Steel's entire testimony overwhelmingly reveals that he gave an opinion as to the current

status of Claimant's lumbar discs, including specifically the L4–5 disc, and found nothing orthopedically or neurologically wrong with Claimant. This testimony is sufficient to find a full recovery from a herniated disc at L4–5.

I would affirm the WCJ and the Board.[3]

---

**3.** I recognize that Claimant also argues that a termination is not warranted because Dr. Steel placed restrictions on her ability to work. However, because the majority did not address this argument, I will not discuss it further.