# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Ellen Borrell,                                :
               Petitioner                   :
                                     :    No.  751 C.D. 2021
            v.                                  :
                                       :    Submitted:  October 22, 2021
Faith Christian School Association    :
of Monroe County, Inc. and            :
Brotherhood Mutual Insurance          :
Company (Workers' Compensation        :
Appeal Board),                        :
               Respondents                 :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge


## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: June 24, 2022


Mary Ellen Borrell (Claimant) petitions for review of the June 25, 2021 order of the Workers' Compensation Appeal Board (Board) that affirmed a Decision of Workers' Compensation Judge Eric Pletcher (WCJ or WCJ Pletcher), granting the Faith Christian School Association of Monroe County, Inc.'s (Employer) petition to terminate (Termination Petition) Claimant's workers' compensation benefits based on her full recovery from her work-related injury, pursuant to the provisions of the Workers' Compensation Act (Act).[1] On appeal, Claimant contends that the Board erred in granting the Termination Petition because there was not substantial competent

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

evidence of record to support the WCJ's finding that Claimant's continuing left knee pain was attributable to preexisting arthritis, rather than her work-related injury, and because Employer's medical expert did not address the accepted work injury. For the reasons that follow, we affirm.

**Background**

On November 1, 2018, Claimant, a physical education and health teacher, sustained a work-related injury when she stepped on a ball and twisted her left knee. Certified Record (C.R.), Item No. 23, at 1. On November 6, 2018, Employer issued a medical-only notice of temporary compensation payable, accepting Claimant's injury as "a left knee strain." *Id.* After 90 days, the notice of temporary compensation payable (NTCP) converted to a notice of compensation payable (NCP) by operation of law. Section 406.1(d)(6) of the Act,[2] 77 P.S. §717.1(d)(6).

On September 10, 2019, Employer filed the Termination Petition, contending that Claimant had fully recovered from her work-related injury as of August 27, 2019. C.R., Item No. 2. In support of the Termination Petition, Employer presented the August 27, 2019 independent medical examination (IME) report of David L. Rubenstein, M.D., and an Affidavit of Recovery executed by Dr. Rubenstein. Claimant relied on her March 11, 2020 testimony before the WCJ and three office notes prepared by Carl Weiss, M.D.

Claimant testified that, prior to her work-related injury, her "left leg felt really good[,]" and she had not sought treatment or taken any medication for any injury related to her left knee, but Claimant had sought treatment for a work-related injury to her right knee that occurred in 2007. C.R., Item No. 12, WCJ 3/11/2020 Hearing

---

[2] Added by the Act of February 8, 1972, P.L. 25.

2

Transcript (Hr'g Tr.), at 11-13. After Claimant was injured on November 1, 2018, she sought treatment at Coordinated Health at Employer's direction. Hr'g Tr. at 10-11. There, she treated with Dr. Weiss, who performed surgery on her left knee on November 27, 2018. Hr'g Tr. at 13. Since the surgery, Claimant's left knee pain has worsened, and she takes Celebrex as prescribed by Dr. Weiss. Hr'g Tr. at 15-16. Claimant testified that she had not previously been prescribed Celebrex or any other medication to treat knee pain, except for the period immediately after her right knee surgery. Hr'g Tr. at 16-17. Claimant indicated that she adjusted her work activities to accommodate her right and left knee injuries by, for example, limiting her movements or utilizing one leg over the other. Hr'g Tr. at 17-18. Claimant takes Celebrex every day because without it she experiences pain and stiffness and is less active as a physical education teacher. Hr'g Tr. at 19-20.

On cross-examination, Claimant testified that she had slightly less left knee pain after the surgery and her knee felt stronger because she no longer feared that it would lock up. Hr'g Tr. at 21-22. She received physical therapy at Coordinated Health before and after the surgery, and while she was not certain whether she continued therapy into 2019, she did not receive physical therapy after her post-surgery therapy ended. Hr'g Tr. at 22-23. Claimant returned to light-duty work on December 3, 2018, and because she could limit her own activities, Dr. Weiss did not place restrictions on her work. Hr'g Tr. at 23-24. On March 18, 2019, Dr. Weiss administered a Gel-One injection to Claimant's left knee, which did not help her pain, and, because she had a bad reaction to it, she did not receive further injections. Hr'g Tr. at 24. Claimant indicated that, before she injured her left knee, she had surgery on her right knee, which Dr. Weiss occasionally checked. Hr'g Tr. at 28. She had not taken pain medication for her right knee injury, but did have an injection in the past, to

3

which she reacted poorly. Hr'g Tr. at 28-29. Claimant testified that, prior to her left knee injury, she did not feel any left knee pain because of her right knee limitations. Hr'g Tr. at 29. She disagreed with Dr. Weiss's assessment that her right knee is worse than her left knee, as she has pain in her left knee but not in her right knee. Hr'g Tr. at 31.

At the March 11, 2020 hearing, the WCJ admitted into evidence three office notes prepared by Dr. Weiss, dated February 25, 2019, March 18, 2019, and November 18, 2019. Hr'g Tr. at 8-9. Dr. Weiss reported that Claimant presented at the February 25, 2019 visit with complaints of swelling in the left knee. C.R., Item No. 14, at 3. Dr. Weiss ordered a Gel-One injection "for arthritic changes which were exacerbated by the work[-]related injury." *Id*. Claimant saw Dr. Weiss again on March 18, 2019, at which time the Gel-One injection was administered. C.R., Item No. 15, at 1-2. Dr. Weiss noted that Claimant is being monitored "for right knee end stage osteoarthritis and moderate osteoarthritis of the left knee[,]" and she will need continued treatment. *Id*. at 2. At the November 18, 2019 visit, Claimant complained of left knee pain. C.R., Item No. 18, at 1. Dr. Weiss reviewed with Claimant x-rays taken of her knees, noting that there were osteoarthritic changes present in both knees and narrowed medial joint space in the left knee. *Id*. at 3. Dr. Weiss reported that he informed Claimant that her knee injuries caused arthritis, the right knee is worse than the left, "and the increased left knee pain is likely because of the limitation of the right knee; [Claimant] is shifting her weight to the left." *Id*. Dr. Weiss recommended a right knee replacement, which he believed would reduce Claimant's left knee pain. *Id*. He further opined that "[t]he left knee may ultimately need to be replaced but fixing the right knee may put off the replacement surgery for a longer period of time." *Id*.

4

Employer presented the IME report of Dr. Rubenstein, who is board certified in orthopedic surgery. C.R., Item No. 21. Dr. Rubenstein began his report by explaining that he reviewed Claimant's medical records and treatment with Dr. Weiss. Those records indicated that Claimant injured her left knee at work in September of 2018 and then again in November of 2018. *Id.* at 2. Dr. Weiss further documented that Claimant was experiencing pain, that her left knee was swollen and tender, and that "[s]he had a positive medial McMurray's test." *Id.* On the recommendation of Dr. Weiss, Claimant underwent a magnetic resonance imaging (MRI) on November 15, 2018. *Id.* The MRI revealed subluxation of the meniscus, minimal patellofemoral arthritic change, joint space narrowing in the medial compartment, and minimal lateral patellar tilt. *Id.* Moreover, there was small-to-moderate effusion, a "Baker cyst," and degenerative change in the lateral compartment in the popliteal area, some thickening of the iliotibial band, and a remote sprain of the medial collateral ligament (MCL). *Id.* Dr. Weiss diagnosed Claimant with an acute medial meniscal tear of the left knee and scheduled Claimant for arthroscopic surgery. *Id.*

On November 27, 2018, Dr. Weiss performed a partial medial meniscectomy, a chondroplasty of the medial femoral condyle, and a chondroplasty of the femoral trochlea, and he also injected Claimant's knee with a steroid. C.R., Item No. 21, at 2. According to Dr. Rubenstein, the specifics of the operative report noted

> normal underside of the patella, the trochlea had grade III change with unstable flaps, chondroplasty performed there, cruciate ligaments intact, medial meniscal tear, and some mild grade III change in the femoral condyle where a chondroplasty was performed. The intercondylar notch had normal [anterior cruciate ligament (]ACL[)] and [posterior cruciate ligament (]PCL[)]. Lateral compartment had normal articular cartilage and a normal lateral meniscus.

5

*Id.* Claimant thereafter began physical therapy, and, when she was reevaluated by Dr. Weiss on December 3, 2018, he did not identify any complications from the surgery and recommended continued physical therapy, which Claimant continued through January of 2019. *Id.* At Claimant's postoperative visit on January 7, 2019, Dr. Weiss noted that Claimant was doing well and improving, attending therapy, and performing home exercises. *Id.* at 3. She was instructed to continue with conservative care and take medication. *Id.* On February 25, 2019, Claimant was reevaluated by Dr. Weiss, who noted continued improvement but persistent swelling in the knee, for which he recommended a Gel-One injection "for arthritic changes which [Dr. Weiss] indicated were exacerbated by the work injury." *Id.* On March 18, 2019, Claimant received the Gel-One injection, and Dr. Weiss indicated that Claimant was being managed conservatively for right knee end-stage osteoarthritis and moderate osteoarthritis of the left knee for which she needed continued treatment. *Id.*

Dr. Rubenstein took a history from Claimant, and she indicated that she had not seen Dr. Weiss since he administered the Gel-One injection five months earlier. C.R., Item No. 21, at 3. Claimant advised Dr. Rubenstein that she had returned to work and was self-limiting her activities based on her injury. *Id.* Dr. Rubenstein documented that Claimant recounted having left ankle surgery and also surgery to her right knee in 2006. *Id.* at 4. She complained of left knee discomfort, some stiffness, lack of flexibility, and pain, which she treats with Celebrex. *Id.*

After examining Claimant, Dr. Rubenstein concluded that her work-related injury caused a left-knee medial meniscal tear, and thus, the arthroscopic surgery was a work-related surgery. C.R., Item No. 21, at 4. He pointed out that, at the time of her surgery, Claimant had fairly substantial arthritic change in the knee. *Id.* Dr. Rubenstein opined that Claimant's medical records do not reveal "any exacerbation

6

of arthritis [of] a material nature." *Id.* He believed that Claimant's "meniscal tear was adequately treated with the surgery and the postoperative rehabilitation" and that "her current treatment reflects underlying arthritis without any indication of material exacerbation." *Id.* at 4-5. Dr. Rubenstein expressed his opinion, within a reasonable degree of medical certainty, that Claimant was "fully recovered [from the medial meniscal tear,] having had no complications from surgery." *Id.* at 5. According to Dr. Rubenstein, any future treatments that Claimant receives to her left knee would not be attributable to her work-related injury. *Id.* Dr. Rubenstein executed an Affidavit of Recovery certifying that Claimant was fully recovered from the work-related medial meniscal tear. C.R., Item No. 21, at 6.

In his Decision issued on August 25, 2020, WCJ Pletcher determined that Employer sustained its burden of proving that Claimant had fully recovered from her work injury as of August 27, 2019. In doing so, the WCJ found credible Claimant's testimony that she experiences left knee pain. WCJ Decision, Findings of Fact (F.F.) No. 16. However, the WCJ placed more weight on the medical evidence, and found Dr. Rubenstein's opinion that Claimant had fully recovered from her work injury to be more credible than Dr. Weiss's opinion. F.F. No. 17. The WCJ noted that, while Dr. Weiss opined that Claimant's work-related injury caused her arthritis, Dr. Rubenstein testified that the November 2018 operative report documented substantial arthritic change in Claimant's left knee. *Id.* Because the operative report was prepared only 26 days following Claimant's work injury, the WCJ rejected Dr. Weiss's opinion that Claimant's work injury caused her arthritic changes. *Id.* The WCJ also found it significant that Dr. Weiss opined that Claimant's right knee injury is worse than her left knee injury, and that the right knee problem is causing Claimant to shift her weight to the left, worsening her left knee pain. *Id.* This opinion, the WCJ reasoned, supports

7

Dr. Rubenstein's conclusion that Claimant had recovered from her work-related left knee injury. *Id.* Accordingly, the WCJ granted Employer's Termination Petition, and Claimant appealed to the Board.

Before the Board, Claimant argued that the WCJ erred because he found that Claimant continues to have left knee pain, yet there is no record evidence that Claimant's pain arose prior to her work injury or was caused by an event that occurred after the work injury. The Board reviewed the record and concluded that the WCJ's Decision was based on substantial competent evidence. In so concluding, the Board observed that Employer was able to meet its burden because the WCJ accepted its expert's opinion that Claimant had fully recovered from her work-related injury. The Board reasoned that simply because Claimant continued to have symptoms does not prevent a finding of full recovery, as the issue was whether Claimant's pain was attributable to the work injury. The Board explained that the WCJ accepted Employer's expert's opinions that Claimant's pain was due to underlying arthritis, and this arthritis was not caused or exacerbated by her work injury. Accordingly, the Board concluded that Claimant failed to show that the WCJ erred and, thus, affirmed the WCJ's Decision.

## Discussion

Claimant now petitions this Court for review of the Board's Order,[3] raising two issues in the Statement of Questions Presented section of her brief: (1) whether the Board erred in concluding that substantial competent evidence supported

---

[3] On review, we determine whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial competent evidence. *Stepp v. Workers' Compensation Appeal Board (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

the WCJ's finding that Claimant's continuing symptoms are attributable to arthritis that existed prior to Claimant's work injury, where the credited testimony established that Claimant's arthritis was asymptomatic until the work injury occurred, and (2) whether the Board erred in affirming the WCJ's Decision to grant the Termination Petition where Dr. Rubenstein failed to address the accepted injury.[4]

## Substantial Competent Evidence

Claimant argues that the record lacks substantial competent evidence to support the WCJ's finding that Claimant's continuing left knee pain is attributable to arthritis that existed prior to Claimant's work injury. Claimant contends that, while the Termination Petition "was based upon an assertion that Claimant's current condition is due to a condition that existed before the work-related injury[,]" "[t]here is no evidence of record to support a conclusion that Claimant had left knee symptoms before" her work injury. Claimant's Brief (Br.) at 9. Moreover, Claimant submits that Employer failed to prove, as it was required to do based on our Supreme Court's decision in *Gumro*, "that Claimant's current condition is the result of an independent cause that

---

[4] In her Petition for Review, Claimant raises three distinct issues for our review: (1) whether the Board erred in granting the Termination Petition based on Dr. Rubenstein's opinion that Claimant's continuing left knee complaints are attributable to preexisting arthritis that was asymptomatic until the work injury; (2) whether the Board erred in granting the Termination Petition where Claimant had continuing left knee pain that she treated with Celebrex and where the WCJ found credible Claimant's testimony that her pain began at the time of the work injury; and (3) whether the Board erred in determining that it could not overturn the WCJ's credibility determination as to Dr. Rubenstein's opinion about the cause of Claimant's continuing left knee pain, where that opinion was equivocal and did not meet the standard for the termination of benefits where a claimant remains symptomatic, as expressed in *Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 626 A.2d 94 (Pa. 1993). Because the three issues presented in her Petition for Review are subsumed within the two questions presented in Claimant's Statement of Questions Presented, we will conduct our analysis according to the two questions presented in Claimant's Statement of Questions Presented.

9

happened after [Employer] filed the NCP." Claimant's Br. at 9. According to Claimant, there is no competent evidence of record to support Dr. Rubenstein's opinion, which the WCJ credited, that Claimant's pain is no longer related to the work injury but is instead attributable to preexisting arthritis. *Id*. at 9-10.

In addition, Claimant argues that, because Dr. Rubenstein's IME report did not address the accepted work injury—a left knee strain, according to the NCP— his opinion that Claimant fully recovered from her work injury is legally incompetent to support the Termination Petition. Claimant's Br. at 11. Claimant relies on *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth. 2001), and *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007), contending that these cases stand for the proposition that a physician's testimony that a claimant had full recovered is insufficient to support a termination of benefits where the testimony does not mention or acknowledge the accepted work injury. *Id*.

Employer responds that WCJ Pletcher's Decision was based on substantial competent evidence. Employer argues that, while the WCJ credited Claimant's testimony that she had left knee pain, he relied on the medical evidence to determine whether that pain was causally related to Claimant's work-related injury. Employer's Br. at 14. In doing so, the WCJ credited Dr. Rubenstein's opinion that Claimant had fully recovered from her work-related meniscal tear and that any further treatment would be unrelated to the work injury. *Id*. Employer points out that WCJ Pletcher rejected Dr. Weiss's opinion that the arthritic changes he observed during surgery were caused by the work-related injury because "he did not believe that such extensive changes would be seen 26 days after an injury if the injury was the cause." *Id*. at 14-15.

Moreover, Employer contends that Claimant's primary argument—that there was insufficient evidence for the WCJ to conclude that Claimant's left knee pain was attributable to preexisting arthritis rather than her work-related injury—is flawed for four reasons. First, Dr. Rubenstein did not opine that Claimant's left knee pain was related to her preexisting arthritis, but rather reported that Claimant had arthritis that was unaffected by the work injury and that any future treatment would not be related to the work injury. Employer's Br. at 15. Moreover, according to Employer, Dr. Weiss also did not relate Claimant's left knee pain to arthritis, but instead opined that her right knee issues were altering her gait and causing her left knee complaints. *Id*. at 15-16. Second, Employer argues that Dr. Weiss and Dr. Rubenstein both attributed Claimant's left knee pain immediately after her work-related injury to a medial meniscal tear that was resolved by the arthroscopic surgery. *Id*. at 16. Third, Employer submits that, simply because Claimant did not report having left knee pain prior to her work injury does not render Dr. Rubenstein's opinion of full recovery equivocal, as Claimant's lack of preexisting symptoms was merely "a factor to be weighed by the [WCJ] in assessing the credibility of the medical witnesses." *Id*. Fourth, Employer argues that, contrary to Claimant's representation of the record, Dr. Weiss did in fact note that Claimant had reported left knee complaints prior to the work-related injury, *i.e.*, from the September 2018 left knee injury. *Id*.

Employer argues that Claimant's reliance on *Gumro* is misplaced because, there, this Court held that the employer failed to show that the claimant's resulting disability in the form of left leg deep venous thrombosis was not related to the accepted work-related injury to his left knee. Here, by contrast, no resulting disability was present, and the issue therefore "was whether [Claimant's] non-disabling left knee pain was related to her work injury." Employer's Br. at 18. Because the WCJ found that

11

Claimant's left knee pain was not related to her work injury based on the credited medical evidence, Employer maintains that termination of benefits was proper.

Employer also points out that its Termination Petition was not premised on the claim that Claimant's ongoing pain was due to a preexisting condition, but was instead based on a change in Claimant's disability status, *i.e.*, she had fully recovered. Employer's Br. at 19. Further, its burden did not include establishing the cause of Claimant's continuing left knee pain. *Id.* Nonetheless, even if Claimant's pain was related to preexisting arthritis, the WCJ found that such arthritis was not caused or aggravated by the work injury based on the credited medical evidence. According to Employer, this critical fact distinguishes the present case from *Gumro*, where the doctor "could not comment on the relationship between the [claimant's] work-related knee injury and the subsequent [condition] that was causing the disability." *Id.*

Last, Claimant's argument that Dr. Rubenstein's opinion cannot support the Termination Petition, because he did not address her left knee strain, is meritless. For support, Employer relies on *Mino v. Workers' Compensation Appeal Board (Crime Prevention Association)*, 990 A.2d 832 (Pa. Cmwlth. 2010), wherein this Court held that a WCJ "did not exceed her authority in amending the description of injury contained in the [NCP] in the context of" a petition to terminate benefits. Employer's Br. at 20. Employer argues that, here, where "both medical experts agreed that the work injury caused a left knee meniscal tear that required surgery, as opposed to a left knee [strain,]" the WCJ "did not err in granting the termination of benefits related to that amended injury." Employer's Br. at 20.

We begin with a review of the law in termination proceedings. An employer seeking to terminate benefits bears the burden of proving either that the claimant's disability has ceased or that any current disability arises from a cause

12

unrelated to the claimant's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Where a claimant complains of continued pain, an employer meets its burden when its "medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions[,] and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted). "If the WCJ credits this testimony, the termination of benefits is proper." *Id.*

Under the standard set forth by our Supreme Court in *Udvari*, Employer satisfied its burden of proof by establishing that Claimant's work injury ceased. While the WCJ found Claimant's testimony that she continued to suffer from left knee pain credible, the WCJ also credited the opinion of Dr. Rubenstein that, within a reasonable degree of medical certainty, Claimant had fully recovered from her work-related injury, and that her claims of continued pain were not connected to that injury. Specifically, Dr. Rubenstein reported that, at the time of Claimant's surgery, Dr. Weiss noted that Claimant had "fairly substantial arthritic change in the knee[.]" C.R., Item No. 21, at 4. Dr. Rubenstein opined that Claimant's medical records do not reveal "any exacerbation of arthritis [of] a material nature." *Id.* He believed that Claimant's "meniscal tear was adequately treated with the surgery and the postoperative rehabilitation" and that "her **current treatment reflects underlying arthritis without any indication of material exacerbation**." *Id.* at 4-5 (emphasis added). By stating that Claimant's "current treatment reflects underlying arthritis without any indication of material exacerbation[,]" Dr. Rubenstein was, in essence, opining that Claimant's left knee pain was attributable to arthritis that was unrelated to the meniscal tear.

13

Because the WCJ credited Dr. Rubenstein's testimony in this regard, the termination of benefits was proper. *Udvari*, 705 A.2d at 1293.[5]

Moreover, we are unpersuaded by Claimant's reliance on our Supreme Court's decision in *Gumro*. Claimant argues that, under *Gumro*, Employer was required to prove "that Claimant's current condition is the result of an independent cause that happened after [Employer] filed the NCP." Claimant's Br. at 9. However, in a termination case, the employer must "show **either** that the disability has ceased **or** that the continued disability is the result of an independent cause." *McGee v. L. F. Grammes & Sons, Inc.*, 383 A.2d 864, 865 (Pa. 1978) (emphasis added). Furthermore, "[an employer] has the burden of proving that an independent cause of an employe[e]'s

---

[5] In her Petition for Review, Claimant raises the issue of whether the Board erred in determining that it could not overturn the WCJ's credibility determination as to Dr. Rubenstein's opinion about the cause of Claimant's continuing left knee pain, where that opinion was equivocal. However, Claimant does not address the issue of equivocation in her brief. Accordingly, that issue is waived pursuant to Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a) (requiring the argument section of a party's brief "be divided into as many parts as there are questions to be argued" and include "such discussion and citation of authorities as are deemed pertinent"). *See City of Philadelphia v. Berman*, 863 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004) (holding that a party's failure to develop an issue in the argument section of his or her brief constitutes waiver of the issue).

Even if Claimant did not waive the issue of equivocation, we would find that it lacks merit. When unequivocal medical evidence is necessary, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in [the witness's] professional opinion[,] the result in question did come from the assigned cause." *Berks County Intermediate Unit v. Workmen's Compensation Appeal Board (Rucker)*, 631 A.2d 801, 804 (Pa. Cmwlth. 1993). Contrary to Claimant's assertion, under *Udvari*, Employer was not required to identify the cause of Claimant's continuing complaints of pain, let alone offer an unequivocal opinion in that regard. Instead, an employer meets its burden when its medical expert unequivocally opines that the claimant fully recovered, the claimant can return to work without restrictions, and there are no objective findings to "either substantiate the claims of pain or connect them to the work injury." *Id.* at 1293. Here, Employer satisfied its burden of proof by presenting Dr. Rubenstein's opinion that Claimant had fully recovered from the meniscal tear and that her continuing pain was unrelated to that work injury. Nevertheless, to the extent that Dr. Rubenstein attributed Claimant's ongoing pain to preexisting arthritis, we find that his opinion is unequivocal, as he opined that "[i]t is clear at the present time that [Claimant] does have underlying arthritis and her current treatment [for pain] reflects underlying arthritis without any indication of material exacerbation." C.R., Item No. 21, at 5. We find that this statement does not reflect any equivocation.

disability arose **after** the filing of [an NCP] **if** the [employer] is seeking to justify the termination of benefits on the grounds that the employe[e]'s **disability** is no longer work[ ]related." *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969, 972 (Pa. 1983) (second emphasis added). Here, Employer filed its Termination Petition based on Dr. Rubenstein's opinion that Claimant had fully recovered from a left knee medial meniscal tear. While Claimant attempts to bring this case within *Gumro's* holding by blurring the line between a continuing **disability** and continuing **pain**, we find *Gumro* inapplicable, as Employer sought to justify the termination of Claimant's benefits, not on the grounds that Claimant had a continuing disability that was no longer work related, but on the basis that Claimant's work-related injury had ceased and, therefore, that she was no longer disabled for purposes of the Act.

### Acceptance of the Work-Related Injury

Claimant's second allegation of error is that, because Dr. Rubenstein's IME report did not address the accepted work injury—a left knee strain, according to the NCP—his opinion that Claimant fully recovered from her work injury is insufficient to support the Termination Petition. We note that Claimant did not raise this allegation of error before the Board and is raising it for the first time on appeal to this Court. C.R., Item No. 6 (Claimant's Appeal to the Board). "The law is well settled that issues not raised before the Board are waived and cannot be raised for the first time before this Court." *Myers v. Workers' Compensation Appeal Board (Family Heritage Restaurant)*, 728 A.2d 1021, 1023 (Pa. Cmwlth.). Thus, the issue is waived.

Moreover, even if not waived, Claimant's assertion of error is meritless. Section 407 of the Act provides that "[a]ll [NCPs] . . . **shall be valid and binding**

15

**unless modified or set aside** as hereinafter provided." 77 P.S. § 731 (emphasis added).

In addition, Section 413(a) of the Act provides that:

> A [WCJ] may, at any time, review and modify or set aside a[n NCP] . . .
> in the course of the proceedings under any petition pending before such
> [WCJ], if it be proved that such [NCP] . . . was in any material respect
> incorrect.

77 P.S. § 771 (emphasis added). On November 6, 2018, Employer issued a medical-only NTCP, which subsequently converted to an NCP, accepting that Claimant strained her left knee. C.R., Item No. 23. According to Dr. Rubenstein's review of Dr. Weiss's records, on November 19, 2018, after reviewing Claimant's MRI results, Dr. Weiss diagnosed Claimant with an acute medial meniscal tear of her left knee and left knee pain. C.R., Item No. 21, at 2. In his IME Report, Dr. Rubenstein agreed with Dr. Weiss that Claimant "sustained a work-related injury to her left knee . . . which resulted in a medial meniscal tear . . . ." *Id*. at 4. The WCJ found Dr. Rubenstein's opinion more credible than Dr. Weiss's and noted that Dr. Rubenstein opined that Claimant's work injury was "more than a left knee strain, rather in the nature of a medial meniscal tear that led to arthroscopic surgery." F.F. No. 17. While Employer relies on our decision in *Mino* to claim that it was not improper for the WCJ to amend the description of Claimant's injury contained in the NCP during the termination proceeding, it does not appear to this Court that the WCJ amended the description of injury from left knee strain to medial meniscal tear. Therefore, the question is whether Dr. Rubenstein's opinion that Claimant fully recovered from a medial meniscal tear was sufficient to support a termination of benefits where he did not acknowledge that Claimant sustained a left knee strain specifically accepted by Employer in the NCP.

16

Claimant argues that Dr. Rubenstein's opinion of recovery was legally insufficient according to our decisions in *Wagman* and *Elberson*. However, the testimony of the employers' medical experts in these cases was held insufficient to support a termination of benefits because the testimony was incapable of encompassing the claimants' accepted work-related injuries. That is not true here. In *Wagman*, we held that the employer's expert's testimony was not sufficient to support a termination of benefits where the doctor testified that the claimant had sustained and fully recovered from an injury that was inconsistent with that set forth in the NCP, but the expert never determined whether the claimant had recovered fully from the injury as recognized in the NCP. 785 A.2d at 1092. In *Elberson*, we held that the employer's expert's testimony was not sufficient to support a termination of benefits where the doctor testified generally that the claimant had recovered from her work injury, but he failed to specifically opine that she had recovered from a herniated disk, the injury specified in the NCP, because he thought the original work injury was less severe— *i.e.*, a sprain or strain in the claimant's back. 936 A.2d at 1199-1200. In the context, this court held that the expert failed to identify or acknowledged the claimant's actual work injury, and, instead, effectively rendered an opinion as to what the original work injury should have been.

In this case, however, Dr. Rubenstein's opinion that Claimant had fully recovered from a left knee medial meniscal tear sufficiently encompassed the accepted injury—*i.e.*, a "left knee strain"—because it is much more severe, medically speaking, than the accepted injury. Unlike in *Wagman*, Dr. Rubenstein's opinion was not inconsistent with the injury described in the NCP. Moreover, in *Elberson*, the nature of the accepted injury was specific, a herniated nucleus pulposus at L4-5, while the employer's testimony was too vague to include that specific injury. Here, in contrast,

17

the nature of the injury described in the NCP was general – a left knee strain – and Dr. Rubenstein's testimony that Claimant had fully recovered from a left knee medial meniscal tear sufficiently subsumed that injury, particularly where it is clear that Employer first accepted in the NCP that Claimant had a left knee strain and, later, upon further diagnostic testing, understood and accepted that Claimant suffered a more serious injury, a medial meniscal tear, with both Dr. Weiss and Dr. Rubenstein agreeing that this condition constituted Claimant's work-related injury.

### Conclusion

In sum, Claimant has failed to establish that Dr. Rubenstein's testimony was insufficient to support a termination of benefits. Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Ellen Borrell,                                    :
                       Petitioner       :
                                 :   No.  751 C.D. 2021
                v.                                 :
                                 :
Faith Christian School Association      :
of Monroe County, Inc. and              :
Brotherhood Mutual Insurance            :
Company (Workers' Compensation          :
Appeal Board),                          :
                      Respondents      :

## ***ORDER***

AND NOW, this 24th day of June, 2022, the order of the Workers' Compensation Appeal Board, dated June 25, 2021, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge